## No. 13,341.

GOFF *v.* BERGERMAN ET AL.

(50 P. [2d] 59)

Decided September 16, 1935.   Rehearing denied October 21, 1935.

Mr. S. S. PACKARD, for plaintiff in error.

Messrs. McHENDRIE, SHATTUCK & POINTER, for defendants in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE plaintiff in error, Goff, asks us to review and re-

verse a judgment for about $2,500 rendered against him by the district court of Pueblo county in favor of the defendants in error on their claim for contribution, to reimburse them for payments made in a compromise with an alleged creditor of a partnership to which both Goff and they had belonged.

The parties hereto, together with certain other persons, of whom some were residents of Colorado and some of Texas, constituted a mining partnership. The Colorado partners, including Goff and the defendants in error, had purchased of the Texas partners for cash a third interest in the partnership assets. Those assets consisted of certain oil and gas leases on lands in Wichita county, Texas, together with a well thereon. As part of the purchase agreement, the well was to be sunk to a depth of 3,250 feet, unless oil were sooner encountered in paying quantities. So far as the Colorado partners are concerned, the expenses were to be, and were, taken care of by the purchase price paid as aforesaid for the one-third interest. When the specified depth was reached, oil had not been struck. Shortly before, in anticipation of this failure, the parties decided to continue drilling. They made a supplemental agreement to that effect.

· The controversy here involved arose over the interpretation of the supplemental agreement just mentioned. Counsel for the defendants in error contend that thereunder the cost of all future partnership operations was to be borne in proportion to the various interests owned, regardless of how much or how little that cost might be. Goff, however, claims that under the agreement the payment of a specified monthly sum or assessment was the limit of each partner's liability. The evidence supports Goff's contention.

When the topic of carrying on under a new agreement was originally discussed, Steward, one of the Texas partners, who was in active charge of the operations and who was at all times the acknowledged representative

and agent of his Texas associates, came to Colorado for conference and negotiation with the Colorado partners. He at first estimated that the future cost would be $5,000 a month. The Colorado partners objected and insisted upon limiting their liability to a figure then and there affirmatively agreed upon, namely, $66 per month for every "unit" of $1,000 originally contributed, which, if the Texas partners should pay their ratable share, would yield a total of $4,752 a month. Steward finally assented to that requirement. The expenditures were absolutely controlled by the Texas partners Steward and Howell. Steward, as manager, paid himself a salary of $10 a day, and Howell, who owned the drilling rig, was paid a daily rental of $20. As between the Colorado and the Texas partners, the two groups were independent of each other in the sense that the Texas group was handled altogether by Steward as its representative without the intervention of the Colorado partners, while Steward was the one who received from the Colorado men their fixed assessments, to be applied on the expenses in accordance with the agreement. There was a clear understanding that neither Steward nor anyone else had authority to contract a partnership indebtedness. Furthermore, the evidence is to the effect that, for the alleged indebtedness underlying the present claim for contribution against Goff, credit was given not to the partnership, but to Steward, or to Steward jointly with Howell. In a letter from Steward and Howell to Goff's attorney, dated January 10, 1929, which was after the Colorado partners had terminated the partnership, it is expressly said (italics being ours): "Charlie (Steward) and I (Howell) have * * * used our crédit to carry this work on not only for ourselves but for you and others. We never hesitated *when money was late getting here* to borrow at the bank to meet payrolls to keep from shutting down, which might have caused the loss of our whole investment through loss of the hole—*We've bought supplies on our credit* for the same purpose *thinking it*

*would all be cleared up in time. * * * I also sent in my interest for 7/64 to take care of the Somers int. that was behind to protect you should we get a well. My rig and time has more than paid my part * * *"* Goff paid his fixed assessments in full. Obviously in further corroboration of Goff's version relative to the arrangement entered into, an amount required for extra equipment was raised by the Colorado partners in addition to the fixed assessment, not under such a general authority for contracting bills as is now claimed for Steward, but by a special collateral agreement with the Texas partners made at the time of entering upon the new basis. Moreover, as to Steward's having authority or power to create a liability beyond the regular assessments, there seems to have been not even a suggestion of it at any time during a period of more than eight months after the supplemental agreement was entered into, nor until the Colorado partners had made it known that they wanted to discontinue the partnership enterprise. Howell, when testifying herein, stated on direct examination that Steward was not himself interested in the lease and merely had control of the operations; but on cross-examination he admitted that Steward had an interest equally with the other Texas partners "under an arrangement between us." All the witnesses agree that Steward was a partner.

However, it is neither the alleged creditor nor the Texas partners who are now suing Goff. The present action was brought by the four Colorado partners appearing as defendants in error. These were the only Colorado partners upon whom service was had in Texas when Bradford Supply Company, the alleged creditor, sued in that state, Goff not being one of them, though he was there named as a party defendant. That service was accomplished because certain property there, belonging to the four defendants in error (the value of which property they considered as amounting to more than the sum thus sued for), was levied upon by attach-

ment or garnishment. Without resisting the claim, they settled it by compromise. They did so without submitting the compromise proposition to Goff. They did it in spite of the fact that Goff had expressly disclaimed liability therefor, and in the face of the further fact that certain of the partnership property had been bought for the partners with the special agreement among them that at the dissolution it would be sold and the proceeds accounted for. This seems not to have been done. Furthermore, the judgment against Goff is founded partly on the alleged deficit resulting from the death or insolvency of some of the Texas partners. None of these matters was adjudicated in Texas, and certainly not in the case now before us. Indeed, judgment in the Texas case went against the Texas partners alone, a dismissal having been voluntarily entered therein as to all four defendants in error, and as to Goff as well. The defendants in error set out in one of their pleadings herein a document from the alleged judgment creditor purporting to assign to them the judgment against the Texas partners and ''any and all rights it has against Frank L. Goff on account of the indebtedness claimed by it as described in'' the Texas suit. But the present case has been dealt with by all the parties on the basis of being an action for contribution.

■ The general rule is that contribution among partners, even where it might be proper, will not be judicially enforced until after a final accounting and settlement of the partnership affairs. Burdick on Partnership (3d Ed.), page 328; *Warring v. Arthur,* 98 Ky. 34, 32 S. W. 221; *Bruns v. Heise,* 101 Md. 163, 60 Atl. 604. There is nothing in this case to justify an exception to the rule. Thus the cause of action is substantially defective, and the evidence in the record also is palpably insufficient. But the trouble with the case is, of course, even more fundamental.

■■ Attention has been called to the fact that the demand here is asserted against Goff by some of his

partners because they claim to have paid out moneys to or for the Texas partners. The situation would be radically different if Goff were here being sued directly by a creditor. It is undoubtedly true that a creditor may sometimes proceed against the assets of a partnership because one of the members has assumed to act on its behalf, even where he has acted without authority, or contrary to instructions or limitations which are in force among the partners but have not come to the knowledge of the creditor. It is also true that a creditor may under such circumstances sometimes recover directly from an individual partner. "An agreement between the partners restricting the liability of one to a certain amount is of no effect as to creditors and they may satisfy all firm debts from his property." 1 Rowley, Modern Law of Partnership, page 628, §497. Nevertheless the partners themselves, as against each other, are held bound by the instructions given and the limitations placed. These exclude altogether the right of contribution. "Because of 'the common saying, that the right to contribution is independent of agreement,' Lord Justice Lindley has felt it necessary to call attention to the very obvious fact, that by agreement the partners may limit the right to contribution or may exclude it altogether." Burdick on Partnership (3d Ed.), page 327, (b). See also Shumaker on Partnership, page 247, sec. 89, line 13, and page 249, sec. 89, line 11. In the case at bar the evidence is clear that the liability of the partners, as between themselves, was limited by their agreement to the respective assessments. If the principle stated by Professor Burdick and all recognized authorities is applied here, the result is that the Texas partners, whose own delinquency in the payment of their assessments (together with their violation of instructions and limitations imposed by the Colorado partners) brought about the financial crisis in the partnership enterprise, could not have sued Goff. Naturally, then, Goff's Colorado associates could not lawfully recover against him for

sums paid out by them to or for the Texas partners under the circumstances here proved as to positive limitations, and as to disregard of restrictions, upon authority among the partners, and as to the method of obtaining credit.

We hold that, for the reasons stated, the rendition of judgment against Goff was prejudicial error, and that the judgment must be reversed with directions to dismiss the action.

Judgment reversed with directions.

## On Petition for Rehearing.

Mr. Chief Justice Butler and Mr. Justice Holland announce that they withdraw their concurrence in the original opinion, and dissent therefrom.